**Earl CHAMBERLIN**

v.

**UNITED ENGINEERS & CONSTRUCTORS, INC.**

**Civ. A. No. 25094.**

United States District Court
E. D. Pennsylvania.

Jan. 18, 1963.

See also 194 F.Supp. 647.

Herman Bloom, Philadelphia, Pa., for plaintiff.

John J. McDevitt, 3rd, Philadelphia, Pa., for defendant.

WOOD, District Judge.

This common law trespass action was instituted by the employee of a subcontractor naming as defendant the general contractor. Plaintiff alleged in his *amended* complaint that the injury sustained was the result of a personal attack on him by a fellow employee and, therefore, was not precluded by the provisions of the Workmen's Compensation Act of Pennsylvania, Section 301(c) of the Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 411.

A jury trial was held on the question of liability alone from September 24 to September 27, 1962, after which the jury became hopelessly deadlocked and a mistrial was declared. The defendant now moves for a judgment in its favor in accordance with its prior motion for a directed verdict under Rule 50(b) of the Fed.R.Civ.P.

Plaintiff Chamberlin was employed as a gang member at the time of the injury by Kolyn Construction Company, the subcontractor, hereinafter referred to as Kolyn. The general contractor and defendant, United Engineers and Constructors, Inc., hereinafter referred to as United, was engaged by the Philadelphia Electric Company, which, among other things, installed pilings on its property

at Eddystone, Pennsylvania. During the course of the work, one Leonard Oesterberg was directing the operation of a crane to drop a beam in the area where plaintiff was working. As the beam was lowered to the ground it struck the plaintiff, causing injuries to his foot. Plaintiff contends that in ordering the beam dropped in the manner in which he did Oesterberg was motivated by personal animosity toward plaintiff and the resulting injury was caused by his deliberate act and was not accidental.

There was uncontradicted testimony in the record that Oesterberg had been the plaintiff's foreman for three months prior to the injury, and that they drove twenty-five to fifty piles daily.

On the date of this occurrence the terrain was extremely muddy and maneuverability was very difficult. The plaintiff and a fellow employee, A. Schurmann, were standing approximately two feet from a hole which contained a partly driven beam. Because this beam was a short one it had to be driven into the ground by using another beam, called a follower, which was attached to the crane by a cable. This follower was fifteen feet in length and weighed at least a ton. The cable connecting this beam to the crane had become fouled, restricting its operation. Schurmann and the plaintiff were engaged in freeing this cable.

While the plaintiff and Schurmann were working at this task, Oesterberg, who was within twenty feet of them, hollered, "Look out!", and ordered the crane operator to lower the follower which struck the plaintiff on his left foot.

This record presents two questions: 1) Whether Leonard Oesterberg's act of ordering the crane operator to drop the beam was motivated by personal animosity toward the plaintiff, and 2) whether the defendant had any notice of this personal animosity.

## DISCUSSION

There is no dispute that the defendant is the statutory employer of the plaintiff under the Workmen's Compensation Act.[1] It follows that the defendant's liability is limited to workmen's compensation unless the plaintiff can show that the injury was the result of a purely personal attack by the assailant Leonard Oesterberg.[2]

The plaintiff relies heavily on Dolan v. Linton's Lunch, 397 Pa. 114, 152 A.2d 887 (1959), which held that an employee

---

1. 77 P.S. § 52 states:

   "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe."

   This section as read by the Supreme Court of Pennsylvania in McDonald v. Levinson Steel Co., 302 Pa. 287, 294, 153 A. 424, 426 (1930) is as follows:

   "An employer [principal contractor] who permits the entry upon premises occupied by him or under his control of a laborer * * * hired by * * * a contractor [subcontractor], for the performance upon such premises of a part of the employer's [principal contractor's] regular business entrusted to such * * * contractor [subcon-

   tractor], shall be liable * * * in the same manner * * * as to his own employee."

   Also see Flaherty v. United Engineers & Constructors, Inc., et al., 213 F.Supp. 835 Chief Judge Biggs' (specially sitting in the District Court, E.D.Pa.1961).

2. 77 P.S. § 411, which defines the terms used in the act and provides in part:

   "* * * The term 'injury by an accident in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment * * *."

   Also see our earlier opinion in this matter reported in 194 F.Supp. 647 (E.D. Pa.1961), wherein we allowed the plaintiff to amend his complaint setting forth this allegation of an alleged personal attack.

can bring a common law action in trespass against his employer for injuries resulting from a *personal* attack based on reasons not connected with his employment. The Dolan case also holds at page 125, 152 A.2d at page 893:

"* * * Here, however, it is the plaintiff who asserts he is not covered by the act and he must *allege facts to show that he is not*." (Emphasis supplied)

This Court, after consideration of all the testimony offered, viewed in the light most favorable to the plaintiff, is of the opinion that the plaintiff has not sustained his burden of proof by showing that this injury was the result of the personal animosity of the foreman, Lennie Oesterberg, toward the plaintiff. Nothing in the record convinces us that such viciousness, hatred or animosity prevailed between the parties as would trigger this alleged personal attack on the plaintiff.

The plaintiff and Lennie Oesterberg only worked together on two jobs. One of these was three years prior to the job during which the plaintiff was injured. They had no outside personal relations. Their only contact occurred during work. Of their job relations, nothing was shown to convince us that Oesterberg had a violent dislike for the plaintiff. This is the only reasonable conclusion which can be reached, especially in light of Oesterberg's warning shout to the plaintiff just before the beam fell on his left foot.

The Dolan case is the law followed in this Circuit when a Court is determining whether an injury is outside the Workmen's Compensation Act of Pennsylvania. Roney v. Paul Tishmain Co., Inc., 200 F.Supp. 75 (E.D.Pa.1961). The plaintiff has not sustained the burden of proof imposed by Dolan to our satisfaction.

While plaintiff failed to allege in his complaint any liability on the part of this defendant as a possessor of land [3] and relied, as aforesaid, on the legal duty of the statutory employer to him beyond the scope of the Pennsylvania Workmen's Compensation Act, supra, he has argued to us that there was liability as a possessor of land running from this defendant to the plaintiff and we will, therefore, consider that point.[4]

As we stated, both sides have agreed that defendant, the general contractor, was a "statutory employer." Therefore, whether United was in "control" or "possession of the premises" is of no legal consequence in light of the issue raised in this case, namely: whether plaintiff can maintain this trespass action or whether he is bound by the terms of the Pennsylvania Workmen's Compensation Act, which he admittedly has accepted.

Nevertheless, we will discuss the facts and the law as to "possession of the premises" as developed from the record.

The testimony offered to show the defendant's possession of the premises was as follows:

United had guards on the gates, some inspectors on the job, and a work shack and dispensary on the premises for the treatment *of all* the workers on this project. It was further shown that United did excavating and grading work to prepare the ground for other contractors.

This land was owned by the Philadelphia Electric Company. Kolyn also had

---

3. The only allegation of negligence in the complaint reads as follows:

"10(a). Leonard Osterberger, the Kolyn Construction Company foreman, was known to have personal animosities and hatreds toward other employees on the job, including the plaintiff herein, which personal animosities were known, should have been known or could have been known, to the general contractor on the job, the herein defendant, United Engineers & Constructors, Inc."

4. "The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection." Prosser on Torts, § 78, p. 459. Under Pennsylvania law a contractor's employee is ordinarily a "business visitor" of the landowner on whose land the contractor is performing work. Giannone v. United States Steel Co., 238 F.2d 544 (3 Cir., 1956).

a work shack on the premises. Kolyn's representative further testified that United had no control over Oesterberg, nor any control over the work gangs and the performance of the work done by these gangs. Kolyn did all of its own hiring and firing and Kolyn hired Oesterberg. United was not in exclusive control of the *work* done on this job even though it was the general contractor. United's inspectors only approved or disapproved the *results* of Kolyn's work.

■ The duty of a possessor or occupier of land toward business visitors is set out in the Restatement of Torts, § 343, entitled Dangerous Conditions Known to or Discoverable by Possessor, which states:

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and,

"(c) invites or permits them to enter or remain upon the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm without relinquishing

any of the services which they are entitled to receive, if the possessor is a public utility."

The duty imposed by this section as applied to the facts of the instant case required United to warn Kolyn, its subcontractor, of the alleged vicious nature of Oesterberg *if Kolyn had no knowledge of this alleged viciousness.* A general contractor such as United was not required to warn every employee of Kolyn of this alleged dangerous condition. Vales v. Peoples-Pittsburgh Trust Co., 339 Pa. 33, 13 A.2d 19 (1940); Engle v. Reider, 366 Pa. 411, 77 A.2d 621 (1951). United was not required to warn Kolyn, if the record demonstrated that Kolyn had knowledge of Oesterberg's animosity toward Chamberlin.[5]

Assuming that the plaintiff's evidence is true, we have his own words that he had complained on several occasions to the partners of the Kolyn Construction Co., Messrs. Teenas and Mattson, concerning the alleged vicious propensities of Lennie Oesterberg. There is no evidence which shows that the plaintiff ever complained to any representatives of United. This leads the Court to the indisputable conclusion that Kolyn, who alone had control of Oesterberg, had notice of his alleged vicious nature from the plaintiff himself. Therefore, United was not obligated to warn Kolyn of this fact which it already had firsthand knowledge from the most interested party, Mr. Chamberlin.[6]

At the close of the plaintiff's case, the defendant moved for a directed verdict. Later, at the close of all the evidence, the defendant renewed its motion for a directed verdict under Rule 50, which

---

5. White's Supplement to Thompson on Negligence, § 979, states:

"It is the rule that the owner of property owes to an independent contractor and his servants at work thereon the duty of exercising reasonable care to have the premises in a safe condition for the work, *unless the defects responsible for the injury were known to the contractor* * * *" (Emphasis supplied)

6. Prosser on Torts, § 78, p. 459, states:

"Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be fully able to look out for himself. Ordinarily nothing more than a warning is required."

was denied. This Court is of the opinion that it was error to have submitted this case to the jury, as there is no material question of fact in this record, requiring a jury's determination. Therefore, this Court believes that the defendant is entitled to its motion for judgment on the whole record.

### ORDER

AND NOW, this 18th day of January, 1963, IT IS ORDERED that the defendant's motion for judgment under Rule 50(b) of Fed.R.Civ.P. is granted.