AETNA INSURANCE COMPANY

v.

**PENNSYLVANIA MANUFACTURERS ASSOCIATION INS. CO., Publicker Industries, Inc., Salvatore Dejewski and Carol, h/w Joan Wexler, ADMX. of the Estate of Neil Wexler, Deceased.**

Civ. A. No. 76–2783.

United States District Court,
E. D. Pennsylvania.

June 30, 1978.

Albert L. Bricklin, Philadelphia, Pa., for plaintiff.

Michael Louis Brodie, Philadelphia, Pa., for Publicker.

James E. Beasley, Philadelphia, Pa., for Salvatore & Carol Dejewski & Joan Wexler.

John F. McElvenny, Philadelphia, Pa., for Pa. Mfgrs. Assoc. Ins.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

### FACTS AND PROCEDURAL HISTORY

This declaratory judgment action arises out of incidents occurring on the premises of Publicker Industries, Inc. (Publicker). On January 27, 1971, Shafiq Suleiman was discharged from his position with Publicker. On January 29, 1971, Suleiman returned to the premises of Publicker and shot Neil Wexler and Carol Dejewski, both employees of Publicker. As a result of the shooting incident, Wexler died and Dejewski sustained injury.

Subsequently, Dejewski and Joan Wexler, administratrix of the estate of Neil Wexler, brought suit in the Common Pleas Court for Philadelphia County against Publicker. In support of her request for compensatory and punitive damages, Dejewski alleged in part:

1. Complaint, of Salvatore Dejewski and Carol Dejewski at page 4, ¶ 13.

Prior to January 29, 1971, the Defendant [Publicker] through its employees, servants and agents, knew that Shafiq Suleiman was unstable, that he threatened female employees of the Defendant, that he threatened the wife-plaintiff, that he had threatened to take violent action against his being fired on or about January 27, 1971, that he constituted a danger to all employees of the Defendant and the wife-plaintiff in particular.[1]

Wexler, seeking damages for the death of her husband, alleged that:

The death of the decedent was caused by the negligence of [Publicker], its agents, servants and employees in that they having, or should have had knowledge (sic) that the said Shafiq Suleiman a former employee was a dangerous person, mentally deranged, who had frequently threatened that he would commit bodily harm to [Publicker's] employees nevertheless permitted him to enter upon the premises of [Publicker].[2]

Wexler also filed a Workmen's Compensation Fatal Claim Petition against Publicker. Publicker filed an Answer denying that the death was related to employment. Such Answer was filed through the Pennsylvania Manufacturers' Association Insurance Company (PMA), Publicker's Workmen's Compensation carrier. At the request of claimant Wexler's attorney, Referee Stevenson ordered an indefinite postponement of the Workmen's Compensation proceeding pending the determination of the Common Pleas action.

Publicker tendered the defense of both the Dejewski and Wexler actions to PMA pursuant to the provision of a Workmen's Compensation and Employer's Liability policy issued to Publicker. PMA declined to afford Publicker either a defense or coverage for the actions, stating that the claims do not "arise out of and in the course of (the claimants') employment", within the meaning of the policy provisions which afford coverage.

2. Complaint of Joan M. Wexler, administratrix of the estate of Neil D. Wexler at page 1, ¶ 4.

Publicker also notified plaintiff herein, Aetna Insurance Company (Aetna), of the suits and tendered the defense and coverage for the claims to Aetna under the provisions of the general liability insurance policy which Aetna had issued to Publicker. After initially rejecting the Publicker tender on the alleged ground that the claims "arose out of and in the course of (the claimants') employment" and hence were excluded from coverage under a provision in Aetna's policy, Aetna caused an appearance to be entered on behalf of Publicker in the Common Pleas Court actions. However, Aetna has afforded Publicker a defense only under the provisions of a reservation of rights letter in which Publicker was advised of Aetna's position that no coverage was afforded under the policy in question.

Aetna has instituted an action for declaratory judgment, praying that this Court adjudge the following:

(a) That coverage for the suits instituted in the Common Pleas Court of Philadelphia County as above described is provided under the policy issued by Pennsylvania Manufacturers Insurance Company;

(b) That Aetna Insurance Company, plaintiff herein, does not extend coverage for the damages claimed in said suits;

(c) That P.M.A. shall be obliged to assume the defense of the actions pending in the Common Pleas Court within the limits of its coverage;

(d) That plaintiff shall be reimbursed by P.M.A. for all expenses and costs incurred to date; and

(e) For such other and further relief as may seem proper.[3]

Plaintiff Aetna has joined insurer PMA, the insured, Publicker, and claimants Dejewski and Wexler as defendants in this action. Jurisdiction is asserted under 28 U.S.C. § 1332, the diversity jurisdiction statute.

Defendant PMA has moved for judgment on the pleadings or, in the alternative, for summary judgment.[4] We deny defendant's motion for judgment on the pleadings since plaintiff's pleadings are sufficient on their face. In view of our finding set forth below that there is indeed at least one genuine issue as to a material fact, i. e., the intentions of the parties to the contracts of insurance, we deny defendant PMA's motion for summary judgment.

## JURISDICTION

A. Diversity of Citizenship.

■ Defendant PMA argues that we are without jurisdiction to entertain this matter. As the parties are presently aligned there is diversity jurisdiction; plaintiff Aetna is a Connecticut corporation; all the defendants are Pennsylvania parties; the requisite amount has been alleged. PMA seeks to defeat diversity jurisdiction by realigning Aetna and Publicker on plaintiff Aetna's side of the caption. Such a realignment of parties would result in Pennsylvania parties appearing as both plaintiff and defendant and would effectively divest this Court of jurisdiction over this matter. For reasons set forth below, we decline to realign the parties to this action.

PMA argues that Aetna and Publicker have identical interests in this litigation. It is urged that inasmuch as the claimants in the Common Pleas action have set forth claims far in excess of the coverage extended by Aetna, it is in Publicker's economic interest that PMA provide coverage for the claims in question. Thus, it is argued that Aetna and Publicker must be realigned as plaintiffs to reflect their similar interest. PMA cites no legal authority in support of this argument. *Universal Underwriters Insurance Company v. Wagner*, 367 F.2d 866 (8th Cir. 1966), cited by Aetna in support of its position that the parties are currently properly aligned as they appear in the caption, refutes PMA's argument. As in *Uni-*

**3.** Complaint of Aetna Insurance Company for Declaratory Judgment at page 4.

**4.** Aetna has not formally filed a motion for summary judgment but has included a prayer

for summary judgment in its Memorandum of Law Contra Motion of Defendant, Pennsylvania Manufacturers' Association Insurance Company, for Summary Judgment at page 14.

*versal,* Publicker, has been placed in an undesirable position by Aetna. Aetna claims that Publicker is not entitled to any coverage under the provisions of its policy. Aetna also avers that it has afforded Publicker a defense against the claims in question under a full reservation of its rights under its policy.[5] In a letter to this Court dated June 16, 1977, considered as a memorandum of law, Publicker responded to PMA's motion for judgment on the pleadings, stating in part that it is its position that "either PMA or Aetna, and perhaps both simultaneously, are legally obligated to extend coverage to us under their respective policies." There is no suggestion in the letter that Publicker endorses Aetna's position that it owes neither a defense nor coverage to Publicker relative to the claims presented against it. These facts belie the contention that there is an amicable relationship between Aetna and Publicker. On the contrary, Aetna's position relative to the claims against Publicker is similar to PMA's position relative to such claims; both insurers vigorously disclaim coverage and accordingly must be considered at loggerheads with Publicker. *Universal* determines that the fact that an insured may be afforded more beneficial coverage under a policy issued by insurer A as compared to a policy issued by insurer B is not dispositive of the question as to whether there is an actual and substantial controversy between the insured and insurer A. Such question is determined by examination of the positions the respective insurers have taken with respect to coverage. Our examination of the position taken by Aetna regarding the claims presented against Publicker discloses that there is in fact an actual and substantial controversy between Aetna and Publicker such that it would be improper to realign the parties, as urged by PMA.

**B. Exhaustion of Administrative Remedies.**

Defendant PMA argues that claimants Dejewski and Wexler have not exhausted their administrative remedies and therefore their claims are not properly before the Common Pleas Court. Furthermore, PMA argues that the claimants' failure to exhaust their administrative remedies renders this Court an improper forum for litigating the issues raised by Aetna which may have a bearing upon the question of compensability of the claims under the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq. PMA places reliance on *Greer v. United States Steel Corporation*, 237 Pa.Super. 597, 352 A.2d 450 (1975). In *Greer*, plaintiff brought an action in trespass against his employer for a disease plaintiff alleged he contracted in the course of employment. The Superior Court entered judgment on the pleadings for the employer, finding that plaintiff was not entitled to bring an action for work related injuries or diseases, after he had accepted the Workmen's Compensation Act and alleged in the course of his pleadings that he contracted a disease in the course of his employment which arose out of his employment, and is related thereto; under *Greer*, Workmen's Compensation authorities not the Common Pleas Courts are empowered to make the initial determination as to compensability.

Dejewski and Wexler argue that their claims are properly before the Common Pleas Court since they fall beyond the coverage of the Act. They direct the Court's attention to *Dolan v. Linton's Lunch*, 397 Pa. 114, 152 A.2d 887 (1959), wherein the Supreme Court of Pennsylvania decided that where properly pled an employee may bring in the Common Pleas Court a common law action for assault by a third person, due to personal animosity; such an assault is expressly excluded from coverage of the workmen's compensation law. See 77 P.S. § 411(1), Supp.1978–1979.

██ Notwithstanding their divergent outcomes, *Greer* and *Dolan* reveal that the claimant's pleadings determine whether a court may exercise jurisdiction over an action involving employment related injuries. In the final analysis, the Common Pleas Court must determine in light of Pennsylvania law whether Dejewski's and Wexler's complaints allege valid causes of action having a jurisdictional basis.

---

**5.** Complaint of Aetna Insurance Company for Declaratory Judgment at page 4.

**632**

## THE APPLICABLE INSURANCE POLI-CIES

### A. The Coverage Terms Of The Policies.

The question as to which insurance policy applies to the claims brought by defendants herein, Dejewski and Wexler, against Publicker in the Common Pleas action is the question at the heart of this lawsuit. Resolution of this question depends upon judicial construction of pertinent provisions of the respective policies. The pertinent provisions read as follows:

This insurance does not apply:

\* \* \* \* \* \*

(g) to any obligation for which the *insured* [Publicker] or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefit laws, or under any similar law;

(h) to *bodily injury* to any employee of the *insured* arising out of and in the course of employment by the *insured*;

. . .

*Aetna's Comprehensive General Liability Policy.* (emphasis theirs)

\* \* \* \* \* \*

Pennsylvania Manufacturers' Association Insurance Company agrees with the insured [Publicker] . . . :

I. Coverage A—Workmen's Compensation

To pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law.

Coverage B—Employers' Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom, sustained . . . by an employee of the insured arising out of and in the course of his employment by the insured

. . . . .

*PMA's Standard Workmen's Compensation and Employer's Liability Policy.*

It is undisputed that the application of the respective policies turns on the meaning given to the language "arising out of and in the course of his employment by the insured."

It is noted that the workmen's compensation law applies to injuries "arising out of and in the course of employment," as defined by that law. However, the Pennsylvania Workmen's Compensation Act expressly excludes "an injury caused by an act of a third person intended to injure an employee because of reasons personal to him, and not directed against him as an employee or because of his employment" from "injury arising in the course of his employment" as used in the Act. 77 P.S. § 411(1), Supp.1978-1979. PMA argues that claimants' pleadings do not reflect that their injuries arose out of and in the course of employment, either within the meaning of those terms as they are defined in the workmen's compensation law or within the meaning of those terms as they are used in Coverage B of PMA's policy. If PMA's argument is correct, neither Coverage A nor Coverage B of PMA's policy applies to the claims in question.

The quoted language taken from Aetna's insurance policy states in part that such policy does not cover claims which fall under the workmen's compensation law or claims which arise out of and in the course of employment. Aetna alleges that its policy was intended to cover all other claims not covered by PMA.[6] Aetna sets forth no factual basis in support of this bald allegation. Plaintiff Aetna argues that the claims in question arise out of and in the course of employment within the meaning of those terms as they are used in Coverage B of PMA's policy thereby absolving Aetna of liability by virtue of exclusion (h) of Aetna's policy. In Aetna's view, the terms "arising out of and in the course of his employment by the insured" in Coverage B of PMA's policy has a broader meaning than those terms as they are defined in the workmen's compensation law. Therefore,

**6.** Plaintiff's Memorandum of Law Contra Motion of Defendant, Pennsylvania Manufacturers' Association Insurance Company, for Summary Judgment at page 7.

although Aetna concedes that the Dejewski and Wexler claims did not arise out of and in the course of employment as those terms are defined in the workmen's compensation law,[7] Aetna argues that those claims fall under the broader meaning it assigns to those terms in the PMA policy.

Aetna and PMA's head-on collision regarding the meaning of the above referenced language is eloquent testimony that there is a genuine issue as to a material fact in this lawsuit.

 It is well settled that a contract of insurance must be given a reasonable interpretation, such as was probably in contemplation of the parties when it was made. 18 P.L.E. Insurance § 91. In the instant action, neither PMA nor Aetna have adduced any evidence as to the understanding between each of them, respectively, and the insured, Publicker, regarding the meaning of the contested language in the insurance policies. The absence of evidence in this regard militates against a reasonable construction of the contested language of the policies such as would effectuate the probable intention of the insurers and the insured. Although both PMA and Aetna vigorously disclaim coverage, the possibility remains that the insured may have had different understandings with the respective insurers regarding the meaning of the contested language such that the claims in question are covered by both insurance policies. The need for probative evidence as to the intention of the insurers and the insured regarding the contested policy provisions precludes the entry of summary judgment for either insurer on the issue of coverage.

### B. The Obligation to Defend

The Aetna General Liability Policy states with regard to its obligation to defend the insured that "[Aetna] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage [to which the insurance applies], even if any of the allegations of the suit are groundless, false or fraudulent." Similarly, the PMA Standard Workmen's Compensation and Employer's Liability policy provides that PMA shall "defend any proceeding against the insured seeking such benefits [required of the insured by the workmen's compensation law] and any suit against the insured alleging such injury [to which the insurance applies] and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent."

In *Gulf Insurance Co. v. Mack Warehouse Corporation*, 212 F.Supp. 39, 44 (E.D.Pa. 1962), involving an action by an insurance company for declaratory judgment that such company was not obligated to defend a suit against the insured, the Court stated:

> Under Pennsylvania law the obligation of the insurance company to defend an action is to be determined by the allegations of the complaint in the original action and the relevant record in the declaratory judgment proceeding. See, *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304, 50 A.L.R.2d 449 (1954), Stern, C. J.; *Federal Insurance Co. v. Michigan Mutual Liability Co.*, 172 F.Supp. 858, 863 (E.D.Pa.1959)

This is a well-supported and accurate statement regarding Pennsylvania law.

Under the standard set forth in *Gulf*, the respective insurers must defend the claims brought against the insured in the Common Pleas Court should the allegations of the complaint in the Common Pleas action and the record in this proceeding reflect that the claims fall within the coverage of their policies. At this stage in the proceedings we are unable to determine under which insurance policy the Common Pleas Court claims fall. Our inability to make this determination stems from the fact that the said policy coverage terms are not susceptible to judicial construction in the absence of any evidence regarding the intention of the insurers and the insured. Until the insurers present such evidence, this Court cannot say that the allegations on their face con-

---

7. Aetna has conceded that the said claims fall within the ambit of said exclusionary provision of the Act.

**634**

tained in the complaint before the Common Pleas Court fall beyond or within either of the insurance policies. We note that the dispute as to coverage intended by the parties to the insurance contracts renders summary judgment on behalf of either insurer inappropriate on the limited record presently before the Court.

### THE COUNTERCLAIMS AND CROSS–CLAIMS

Defendants Dejewski and Wexler present certain counterclaims against plaintiff Aetna and certain cross-claims against co-defendants Publicker and PMA. Jurisdiction is asserted under the diversity jurisdiction statute and under the doctrine of ancillary jurisdiction. Dejewski and Wexler cite no provision of the Federal Rules of Civil Procedure affording them the right to bring these claims against the said parties. However, it is noted that said defendants in the course of their pleading aver that their claims arise out of the same incident, transaction, or question presented by the action for declaratory judgment. This averment comports with one requirement of Fed.R. Civ.P. 13(a), authorizing the assertion of compulsory counterclaims.

Our analysis reveals that certain of the counterclaims are not properly assertable as compulsory counterclaims for the reason that the above referenced requirement has not been met. Defendants' counterclaims and cross-claims seek in part an adjudication of the claims for liability against Publicker pending in the Common Pleas Court action. The subject matter of the declaratory judgment action is the liability or non-liability of plaintiff on the insurance policy. The subject matter of one of the counterclaims is the negligence or non-negligence of defendant, Publicker. Borchard, Declaratory Judgments, 2nd Edition states at page 652:

> The liability under the policy and the liability for negligence are indeed two separate transactions.

We agree; the insurer's contractual liability and the insured's tort liability in the instant action are fundamentally distinct.

Inasmuch as Fed.R.Civ.P. 13(b) defines a permissive counterclaim as one that does not arise out of the "transaction or occurrence that is the subject matter of the opposing party's claim", defendants' counterclaim seeking adjudication of Publicker's tort liability is permissive, not compulsory. The Dejewski and Wexler counterclaim is also permissive rather than compulsory for the reason that at the time the instant action was commenced an action on the tort claims was pending in the Philadelphia Common Pleas Court. See Fed.R. Civ.P. 13(a).

Even if the injuries sustained by Dejewski and Wexler fall within the coverage provisions of the Aetna policy or the PMA policy, as a general rule, in the absence of statutory or applicable policy provisions to the contrary, one who suffers injury within the provisions of a liability insurance policy is not in privity of contract with the insurer of the alleged tort feasor, and cannot bring an action directly against the insurer on the claim.[8] The only Pennsylvania law authorizing a direct action by an injured third party against the insurer of an alleged tort feasor, the Act of May 24, 1933, P.L. 987, § 1, 40 P.S. § 117, authorizes such direct action only upon the bankruptcy or insolvency of the insured. There is neither proof nor allegation that these circumstances exist here. Neither of the insurance policies provide a direct action against the respective insurers under the existing circumstances. Accordingly, the above referenced general rule forbids the Dejewski and Wexler counterclaim against Aetna and cross-claim against PMA seeking a determination of the tort liability of the insured.

Furthermore, we note that the terms of the insurance policies herein expressly prohibit the joinder of the respective insurers in any action against the insured to determine the insured's legal liability where, as in the instant action, there has been no prior judgment against the insured or agreement among the insured, the claimant, and the insurer as to the amount of the

---

**8.** See 46 C.J.S. Insurance § 1191 at page 107.

insured's obligation. Defendants Dejewski and Wexler advance no argument as to why these terms should not be deemed controlling, barring the counterclaim against Aetna and the cross-claim against PMA. Without deciding whether these policy terms bar the said claims, we note in passing that other Courts have forbidden such tort claims against insurers where there existed similar "no action" policy provisions.[9] Relying only upon the above referenced general rule which applies to the instant action, we hold that the counterclaim against Aetna and the cross-claim against PMA seeking adjudication of the insured's tort liability cannot be brought.

The question remains as to whether the sole cross-claim against Publicker seeking a determination of its tort liability is maintainable. Cross-claims are authorized where a party states against a co-party a claim "arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." Fed.R.Civ.P. 13(g). It has been determined that the tort liability claim does not arise out of the transaction or occurrence that is the subject matter of the declaratory action. Furthermore, such claim does not relate to any property that is the subject matter of the declaratory action. Although the tort liability claim in fact arises out of the transaction or occurrence that is the subject matter of the counterclaim, this Court has held, supra, that such counterclaim cannot be brought. Accordingly, the tort claim against Publicker does not meet the test for cross-claims set forth in Rule 13(g) and there is no basis on which this Court can invoke ancillary jurisdiction over such claim. See Wright & Miller, Federal Practice and Procedure: Civil § 1433 at page 179. Defendants Dejewski and Wexler having alleged no independent jurisdictional basis in support of their tort cross-claim against Publicker, this Court lacks jurisdiction to entertain such claim.

The remaining counterclaim and cross-claim in the instant action seek a determination that the two liability insurers were negligent in their handling of the claims brought by the claimants against the insured in the Common Pleas Court action. These claims sound in tort theory and involve a fundamentally different factual and legal investigation than does the original contractual action. It follows therefore that the counterclaim is permissive rather than compulsory. It is well-settled that all cross-claims are permissive in that the cross-claimant is under no compulsion to bring such claim. See Fed.R.Civ.P. 13(g). In view of our finding that allowance of the counterclaim and cross-claim would unduly complicate this action, we dismiss such claims without prejudice.

9. See, *American Fidelity Fire Insurance Company v. Hood*, 37 F.R.D. 17 (E.D.S.C. 1965); *Globe Indemnity Co. v. Teixeira*, 230 F.Supp. 444 (D.Hawaii 1963). But cf. *Allstate Insurance Company v. Smith*, 169 F.Supp. 374 (E.D. Mich. 1959); *United States Fidelity & Guaranty Co. v. Janick*, 3 F.R.D. 16 (S.D.Calif. 1943).