450

Jessop Steel Company and The Home Insurance Company, Petitioners *v*. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Paul R. Mounts, Respondents.

Argued December 4, 1979, before Judges WILKINSON, JR., BLATT and CRAIG, sitting as a panel of three.

*Raymond F. Keisling*, with him *Will & Keisling*, for petitioners.

*C. Jerome Moschetta*, for respondent.

OPINION BY JUDGE WILKINSON, JR., January 11, 1980:

Claimant was awarded compensation by a referee and the Workmen's Compensation Appeal Board (Board) under The Pennsylvania Workmen's Compensation Act (Act)[1] for disability resulting from a

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 *et seq.*

work-related myocardial infarction. Jessop Steel Company (employer) appealed to this Court.

Claimant worked for the employer from 1941 to 1948 and from 1955 to September 11, 1975 as an overhead ladle craneman in the electric furnace department. On September 11, 1975, claimant was operating an overhead ladle crane and was sitting in the control cab thereof awaiting the work activity of others. Because he had felt cold, claimant turned off the cab's air conditioning system and for approximately 30 minutes parked the crane 12 to 15 feet directly over a pile of hot steel ingots. Claimant lost consciousness and suffered a myocardial infarction. Two fellow employees removed claimant from the cab. The plant nurse received proper notice of the injury, and claimant was put on a stretcher and had oxygen administered to him. He was taken to Washington Hospital Emergency Room where a physician examined him and told him to go back to work. An electrocardiogram was not done at Washington Hospital. On returning to the employer's plant claimant was sent home.

The next day, September 12, 1975, to September 27, 1975, claimant was an in-patient at Ohio Valley General Hospital. An electrocardiogram and other tests confirmed that claimant had suffered a myocardial infarction on September 11th. After several hearings the workmen's compensation referee awarded compensation benefits. The Board affirmed the referee's order. In this appeal the employer asserts that the referee's finding that claimant's myocardial infarction arose in the course of his employment and was related thereto was not supported by sufficient competent evidence.

It is not necessary for a claimant to prove an "accident." Injuries sustained by employees after May 1, 1972 are compensable if they (1) arise in the course

of employment and (2) are related thereto. *Workmen's Compensation Appeal Board v. Ayres Philadelphia, Inc.*, 23 Pa. Commonwealth Ct. 249, 351 A.2d 306 (1976). There is little doubt that claimant's injury arose in the course of his employment. It is uncontroverted that the incident on September 11th took place while claimant was sitting in the control cab of his overhead ladle crane and was waiting out a delay on the floor of the mill.

There is substantial evidence supporting the referee's finding that exposure to the excessive heat in the cab caused claimant to lose consciousness and to suffer a myocardial infarction and supporting his conclusion that claimant's injury was related to his employment. Claimant testified that he was in the cab parked over the hot steel ingots for 25 to 30 minutes before he lost consciousness. Two co-workers testified that intense heat was in the cab, one of the co-workers describing the hot air that came out of the cab was similar to that coming out of a steel furnace. In a report entered into evidence, a professional engineer who had reviewed the testimony of the three workers and who had personally inspected the cab and the steel mill stated that by taking the temperature of the steel ingots to be 1500 degrees Farenheit (the lower estimate in the testimony) and by applying recognized, conservative engineering analysis and principles of the laws of thermodynamics, he calculated that the cab would have received radiant energy in the amount of 20,000 British Thermal Units per hour from the hot ingots below and that the temperature in the cab would have risen to 140 degrees Farenheit.

Claimant's treating physician testified by deposition that, in his professional opinion and with reasonable medical certainty, claimant's myocardial infarction was caused by claimant's exposure to the excess heat in the cab of the crane. In his deposition the

employer's medical expert stated that he did not see that sitting in the cab, claimant's usual occupational activity, in any way precipitated a myocardial infarction. However, on cross-examination he testified that the exposure of a susceptible person from a cardiovascular standpoint to temperatures up to and including 140 degrees Farenheit for 20 to 30 minutes can precipitate a myocardial infarction. Questions of credibility and weight of the evidence are for the referee, *Interstate Truck Service, Inc. v. Workmen's Compensation Appeal Board*, 42 Pa. Commonwealth Ct. 22, 400 A.2d 225 (1979), as are choices between conflicting testimony, *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

Accordingly, we affirm the decision of the Workmen's Compensation Appeal Board and enter the following

ORDER

AND Now, January 11, 1980, the order of the Workmen's Compensation Appeal Board, Docket No. A-75862, dated February 22, 1979 is affirmed. It is ordered that judgment be entered in favor of claimant Paul R. Mounts and against Jessop Steel Company and The Home Insurance Company in the amount of $171.00 per week beginning on September 12, 1975 and continuing so long as the disability lasts, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

Jessop Steel Company and The Home Insurance Company are directed to pay the following reasonable medical expenses to the persons provided:

Dr. Charles L. Beall, upon presentment thereof by claimant's attorney.

454

Ohio Valley General Hospital, $147.36.

In addition, Jessop Steel Company and The Home Insurance Company are directed to pay C. Jerome Moschetta, claimant's attorney, $643.00 for reasonable costs incurred on behalf of claimant. Jessop Steel Company and The Home Insurance Company are further directed to pay to C. Jerome Moschetta, claimant's attorney, the sum of $4,600.00 for attorney fees out of the first lump sum amount due claimant. All remaining compensation, together with interest, is to be paid directly to Paul R. Mounts.

This decision was reached prior to the expiration of the term of office of Judge DiSalle.